May it please the Court, James Fife of Federal Defenders, on behalf of the petitioner, Mr. Urbino. At the outset, I'd like to apologize to the Court for the need to postpone the previous argument and to thank the Court and counsel for their indulgence. Well, we didn't want you to bring the swine flu to us. I didn't want to bring it to you either, but fortunately that emergency has passed. I'd like to reserve two of my minutes for rebuttal. Watch the clock. The BIA erred in denying cat relief because it found Mr. Urbino's credible testimony was insufficient, but the circuit has repeatedly held that corroboration of a claim or relief from removal is unneeded when the applicant is found credible, as Mr. Urbino was. Well, hasn't the law changed somewhat with subsequent cases, which seems to allow the plaintiff corroboration? Well, Your Honor, the most recent thing that I've seen is the Sinha case, which was decided just a few weeks ago. That's at 564-1015. And at page 1020, the Court said throughout, because the IJ made no adverse credibility finding, we take Sinha's testimony as true. That is, if there is no adverse credibility finding, this Court has repeatedly, repeatedly said that no corroboration is needed. That alone is sufficient. Counsel, what does the REAL ID Act say? Is it applicable or not applicable? It is applicable to this case. What does it say about that issue, about requiring corroboration? Well, it says that the Court can require corroboration, that that is not necessary, but that it can look to that and look to other things in the record to determine that. These proceedings went under the assumption that the old rules apply, though, did they not? I don't believe so, Your Honor. I don't think there's anything to Was anybody invoking the REAL ID Act? Yes, the government did. the trial attorney at the removal hearing, and that's at the certified record, page 244. The trial attorney drew the IJ's attention to the REAL ID Act standards. So this was raised below. Now, the amendments under the REAL ID Act went into effect in 2005. This case was decided in 2006. The Supreme Court, this Court, all standard sources indicate that we take the presumption that administrative bodies follow the law as it is enforced at that time. There's no reason to assume, simply because the Court doesn't mention anything about these additional amendments, that it didn't consider them. We presume that it did follow the law. Now, he did add corroboration when he presented it to the BIA. That's correct, Your Honor, but it was also proffered below at the removal hearing. It was proffered below? Mr. Owino's brother's testimony by telephone was offered. That was, but he then added documents that were in corroboration that he sent to the BIA. Is that not correct? That's correct, Your Honor, but even back in March 7th of 2006, Mr. Owino was representing to the Court that he was trying to obtain documentary evidence in addition. And, in fact, on the March 7th hearing, three times the immigration judge says, I'm holding the record open so that more evidence can be presented, because the IJ was on notice that they were attempting to obtain material. She said that again on page 230. That's at the March 27th hearing. My question is, should we now consider that and tell the BIA to send it back to the IJ, because here now is the corroboration? Well, I think that's one possibility. I think, on the other hand, though, that there's sufficient evidence here on the record. Mr. Owino's testimony, which was found credible by the BIA, is sufficient to sustain his application for relief. And I think that there's plenty on the record right now, or on the basis of things which this Court can judicially notice at this point, to indicate that Mr. Owino did suffer torture and that the conditions in that country have, if not remained the same, have certainly worsened. The most recent information that I saw available was a report by a special rapporteur of the UN Council of Human Rights. This was based on a field study made in February this year. His report is issued in March of this year, indicating that the police have engaged in widespread extrajudicial murders with impunity. And that was Professor Alston's finding. And I can read the Court a couple of quotations from that. But in addition, the State Department's 2008 Human Rights Report indicates as well that there's – well, let me just quote from what the State Department said. Is that in the record? It's not in the record now, Your Honor, but I would say that because these are official reports to the Department of State and the UN Council of Human Rights, that they are judicially noticeable. Yes. And only for the purpose of indicating that there's a well-founded fear that the persecution will persist for Mr. Ueno, especially in light of the fact that there is an outstanding arrest warrant for Mr. Ueno. If he returns to Kenya, he will be arrested by the same people who tortured him before. The State Department said in their 2008 Human Rights Report, police frequently used violence and torture during interrogations as punishment and as punishment of pretrial detainees and convicted prisoners. And as I said, the UN Special Rapporteur's report from March of this year uses even stronger language about the state of police impunity in Kenya and that these – as the Human Rights Watch reports for 2009 also indicates that much of this violence is aimed at the Luo tribe. Mr. Ueno's tribe is one of the primary victims because they were considered the primary opposition group to the majority Kikuyu. And so Mr. Ueno would certainly be a target if he was returned. So if the evidence is credible, if we have to take his evidence, his testimony as true, as numerous cases, Kaur, Kapartian, Kunaverjens, Lada, all these cases have said that when there's credible testimony, then we can accept that. We can accept what's taken as true. As Judge Berzon said in Sinha recently, there's no adverse credibility finding. We take Sinha's testimony as true. But I'm a little confused. Under the Real ID Act, the regime is that they can still require corroborating evidence. They don't have to find the old regime has been statutorily overruled or at least modified. So why is it that the corroborating evidence requirement shouldn't be upheld here? Well, Your Honor, I think the evidence is strong. I mean, finding that the fact that the court is allowed to ask for corroboration, it has to be at least reasonable. Simply requiring corroboration, say, isn't a reasonable decision. Here, if Mr. Ueno, if they found Mr. Ueno's testimony was credible, it covered all the points. I think the only point necessary for deferral of cat relief would be, is it continuing? Do we have any showing that he would be under the same persecution if he were to return? I think the evidence that's now available currently, because this has been going on for some time, we have to look at the most current evidence. The most current evidence pretty clearly shows that, yes, that this kind of acts have, if anything, worsened. The police are acting under conditions of near impunity, not just in torturing people, but in murdering them. Why don't you save the rest of your time, as you suggested?  Thank you. May it please this Court, my name is Andrew Oliveira. On behalf of the Respondent, the Attorney General, Eric H. Holder. Ueno was convicted of an aggravated felony rendering him ineligible for asylum and withholding of removal. Subsequent to briefing in this case, this Court has determined that it does have jurisdiction over denials of cat protection as a factual matter. Accordingly, the government believes that this case should be responded, remanded, excuse me, so that it may be adjudicated pursuant to the Real ID Act. Now, do you take issue with counsel's argument that, in fact, Real ID was argued by the government and that the IJ and BIA must have taken that into account? Well, the immigration judge did mention the Real ID Act during one of the hearings. Neither the immigration judge's decision nor the board decision addressed the Real ID Act and the standards, and it's changed, so we don't actually know. What would be the issue on remand, then? Well, for one, the adverse credibility finding, because that was an adjudicated pursuant to the Real ID Act. Furthermore- Say that again, would you? There is no evidence that the adverse credibility finding was adjudicated pursuant to the Real ID standards. Furthermore, the corroboration requirements. Pursuant to the Real ID Act, even credible testimony to meet your burden of proof, corroboration can be required. The board's decision simply does not address the Real ID Act standards with respect to corroboration. Well, but they didn't accept the adverse credibility. That is correct. So are you suggesting now they can go turn around and decide that they do accept it? They would have to re-evaluate it. They may still not accept it. All right. And then so what would be the-I'm trying to understand what the remand would be to the BIA, go back and decide whether corroborating evidence should or shouldn't have been required, or can they go back and now re-evaluate the credibility finding and say, oh, now we find the IJ properly found him incredible? I don't believe it would be appropriate for the board to apply the Real ID standards with respect to the adverse credibility if the immigration judge does not. So in that respect, you'd probably have to go back for a hearing for the immigration judge. So would the immigration judge then look at the corroborating evidence and look at the latest country reports? Yes, given that three years have passed since the board heard the case last, it would be appropriate for at the very least submission of the country-newer country reports. All right. Again, I believe the other claims that Owino raised do not need to be addressed by this court. The due process claim was not raised sufficiently before the board, and the board certainly did not address it, so this court cannot consider it on the merits. What did the petitioner say about due process? Well, the claim was that the immigration judge violated due process by not allowing Owino's brother to testify as to the letter. The record reflects, however, that the immigration judge accepted the letter in its entirety and accepted it as true. But he didn't think that was enough, and the brother could have testified to other things. Is that not accurate, that would be corroborating? That is correct, the brother could have, but the record reflects that when it was proposed that the brother testify, it was simply to verify that he wrote the letter in question. There was no request that he supplement the contents of the letter, and the immigration judge had expressed no qualms about the veracity of the contents. If we were to send it back on an open record, which is what you're kind of suggesting, at that point, could a request be made for the brother to testify to X, Y, and Z? Yes. The immigration judge would follow the normal rules of evidence and consider that, but yes, a request could be made. All right. If there are no further questions? I don't think so. Thank you. Just briefly, Your Honors, on the remand issue. First of all, the government did not raise this on appeal to the BIA. In fact, their one-page, one-paragraph brief simply stands on the merits of the IJ's decision. They didn't raise this. This court on Bonk and Abebe said that if the Ninth Circuit doesn't reach procedural defaults and decides a case on the merits, this court cannot then go back, reach back, and consider the case on the basis of defaults, on procedural defaults. The government has waived this. They cannot now bring it up. In addition, Your Honor, I've just taken a quick look at the record. It's true that counsel specifically offered the telephonic testimony because the IJ had raised specific concerns, that why is he just now coming across this information? He told us before he wasn't in contact with his brother, but the counsel explained that his brother had found Mr. Owino on the Internet by finding him where he was located in prison and had contacted him three days before, the Friday before the Monday of the immigration hearing. They had just now gotten in contact with him, and they had finally arranged to have him on standby to answer any questions. It just so happened the IJ expressed concern that this seems to be rather sudden and suspicious that he's only hearing from him now. So it's true that counsel on the record offered- The IJ assumed, however, that if the brother testified, he would say what was in the letter, correct? Yes, correct, that he would verify the contents of the letter and anything further that the counsel would elicit. Did counsel suggest to the IJ what it was that would be gained by the brother testifying? Well, I think the problem was the letter was not submitted- I'm not answering my question. Did the counsel make a proffer as to what the brother would testify to beyond what was in the letter? I just took a quick look at the record, and I don't see anything, Your Honor, at this point. But the fact is that the letter that was submitted was a personal, friendly letter. It wasn't sent to provide evidence to the court. It was simply submitted to show that they were in contact and to corroborate some of the details of Mr. Owino's past. Well, that may be, but that's why he was in control of the letter. That's true, Your Honor. But this came up at such a very short notice, just days before the hearing. They were trying to get contact not only with the brother, but with his other family who were in France and gathering this information. And by the fact of the materials that were attached to the motion for remand in the BIA shows that this material was in the works. It was literally in the mail, and it was produced. Even more material has been produced. I know it's not part of the record in this case, but in the habeas case, there's even more material that's been presented. Material has been accumulating. This thing can't be done overnight. That's exactly why in CUI this Court said when there's a reasonable continuance will allow the applicant to perfect any deficiencies in the record, the Court has to do it. All right. You're over time. I think we have the point. All right. Thank you very much. All right. The first case involving Mr. Owino is submitted. And, Mr. Owino, you're welcome to stay online for the second part of the hearing as well, of course. Thank you.
judges: Fletcher B. , Fisher, Gould